matter for the morning, which is Tara King et al. v. Governor of the State of New Jersey and Garden State Equality Intervenor. We have allowed an hour of oral argument in this case, one half hour per side, and as a consequence we will stick to the clock, which is not often the practice of this court, but it's not often in a non-embankment matter that we provide an hour for oral argument. I'll also indicate to counsel that the panel met prior to argument and has decided that we would like counsel to limit their arguments to the issues of speech, which is essentially devolved into the conduct versus speech question, and the third-party standing issue. So with that said, I would ask Mr. Staber to go forward for the appellants. Your Honor, I'd like to reserve about seven minutes for rebuttal. Granted. May it please the court, I'm Matt Staber, I represent the appellants. We respectfully request this court to reverse the district court order below because the A3371 law violates the First Amendment. It prohibits from receiving any counsel to change or reduce same-sex attractions, romantic attractions or feelings, behavior or identity, toward a person of the same gender. Any counsel by licensed counselors from the state of New Jersey. That's correct. These counselors and these same clients, however, may receive or offer counsel that is accepting or affirming of that same exact subject matter. Is there a prohibition on informing clients of the availability of sexual orientation change efforts through non-licensed counselors? The statute does not specifically say that there is a prohibition against informing them of that. However, the ethical codes require that when you refer out even to a licensed or an unlicensed counselor and you're continuing to counsel that client for other issues, that that counsel still has their obligation to follow up and interact with the individuals, whether it's unlicensed or licensed. So for example, if somebody came in with depression and the person, after a couple of series of counsel, indicated that they had some unwanted same-sex attractions or feelings toward an individual of the same gender, if that counselor referred out, that counselor is obligated to stay involved in that client's counseling process, whether it's unlicensed or licensed. Under no circumstances may any counsel with regards to change or reducing any of these feelings or behaviors or identity may be offered. Only counsel that is affirming. In the history of the common law, that's been... Let's go into the statute itself. The statute says that... I don't have it in front of me. Soch... How do you pronounce that word? Soch or sexual orientation change efforts. Do I have to say the whole thing? No, just say soch. Okay. Soch... I gather from the briefs, which I'm sure we've all read very often, that the statute presents itself as being helpful to the patient. Correct. Being affirmative to the patient. But the statute specifically says that anything like that is not included in the prohibition. So I don't understand what you're complaining about. It's not affirming of the person's unwanted feelings. If the client comes to the counselor and has unwanted feelings for whatever reason toward a person of the same gender, romantic feelings, attractions, anything else on a broad scale, and does not want those feelings, the counselor cannot counsel that person to reduce or eliminate those feelings under this law. The soch says that as long as it does not seek to change, or the law says that sexual orientation change efforts means that it encompasses a person's sexual orientation, including but not limited to efforts to change behaviors, gender identity, or gender expressions, or reduce or eliminate sexual or romantic attractions or feelings toward a person of the same gender. So if the person wants to eliminate those attractions or feelings, the counselor under this law cannot do that. The counselor can only affirm those as being okay, even though the client, in their right to self-determination, chooses not to go down those particular feelings, has a conflict, for example, between their feelings or their behaviors, or how they identify themselves, or their mannerisms, and their objective values. Mr. Staver, so far the discussion seems to have centered on what the statute says and how it relates to the approach of a client to treatment or counseling. But I'd like to get to what is the great divide in this case, and that is the dichotomy that has been discussed both here in the district court and also in the pickup case. It's a stark divide, and speaking only for myself, I'm not sure how helpful it is analytically in this case and in this setting, that is the counseling therapy setting. I'm talking about the characterization of what goes on here within a therapist's office as conduct or speech. Would you agree with me that the state of New Jersey can prohibit some specific physical treatment by a licensed physician, let's say a surgical procedure, without that implicating the First Amendment? Yes, I would agree with that. All right. So should it matter for First Amendment purposes that the treatment here, I'm not sure phonetically where you get S-H out of C-E, but I'll go along with that, that it's administered through spoken words rather than through the application of a scalpel? Well, there's a big difference between an invasive procedure where someone is using a scalpel and a particular surgical procedure is that issue versus someone speaking. And you have tried to make that difference to a great extent on the basis of the therapy that is offered here being talk, being talk therapy. That's a big part of your argument, is it not? Yes. But not all talk is speech, is that term of art is used under the First Amendment. Would you agree? I would agree, but counsel is speech, and counsel as the definition of that is to actually exchange opinions and ideas to reach an objective or a decision, and that's what counselors do. All right. Well, your adversaries in the persons or entities of the State of New Jersey and Garden State Equality have pointed to the Giboney case. What weight does the Giboney case carry here? Because that case, although it may be, teaches that at least in some instances what may appear to be speech or expression is in fact conduct. I think the case that really better applies is the case that this Court issued in Bonk and the United States Supreme Court affirmed, and that is the United States versus Stevens case. What's at issue here is the elimination of an entire category of speech by just simply calling it conduct. I must confess some confusion. I wrote the Bonk decision in Stevens, and I'm having a difficult time seeing its applicability here. I think what Stevens stands for is the reluctance of lower courts until the Supreme Court decides to eliminate an entire category from speech protections, and Pickup and the lower court actually did that. They did this continuum of three-tier continuum with this talk therapy, which all nine judges who have looked at this so far have all agreed that what is at issue here is talk. Four of those nine have felt that it was speech that's at issue, and the three at the Ninth Circuit in the dissent on the rehearing in Bonk felt that it was exactly this, eliminating an entire category of speech. So what the court did was say that this is conduct, and therefore it has no First Amendment protection. Well, but I noticed that in your brief, you do not address, in fact, in checking the table of citations, again, I don't think you even cited to Planned Parenthood versus Casey, did you? I don't think we did in this particular case. We've done it in a previous, but I don't think in the appellate court, but in the Planned Parenthood. There's a very interesting holding, some very interesting language in that case, and I want to ask both sides about what it may suggest for application here, and that was, what I would say was a holding, because although it was a plurality opinion, I believe there were five votes for this part, for the part of the opinion that a physician's speech, when part of the practice of medicine, is subject to reasonable licensing and regulation by the state. So in the first instance, it would appear there is a recognition by the court that physician speech is part of the practice of medicine. It can't be, in fact, just that, speech, but at the same time, it's subject to reasonable licensing and regulation. Yes, but in that particular case, it was actually a three-judge plurality that signed on to that provision, and that law specifically allowed the doctor to make an individual determination as to whether information beyond what they were to be given should be given. So that was not a blanket ban on the doctor. It was the doctor providing information to the patient, but if the doctor believed in his or her... It effectively informed consent in the way the Pennsylvania statute directed dissemination of information, wasn't it? Yes, but it also specifically said that the doctor, if they felt in any particular situation that in his or her medical judgment, that was contrary to the best interest of the client or the patient, that they could do something different. So it is a blanket prohibition. The subject matter is permissible, but the viewpoint on the subject matter of change is not, and that is completely unique throughout the history of not only the common law, but the statutory codification of doctor-patient, client-counselor relationships. When a client comes in to a counselor, they expect to hear a particular message because they have the right under the codes to set their consent objectives. I'm a bit surprised by your response, though, because, I mean, it would... Nor did I intend the question to be a softball, but it seems to be an acknowledgement by some members of the Supreme Court that during the course of medical treatment, speech may occur as part of that medical treatment. Yes, but again, it's a three-judge plurality, but it was informed consent, and it wasn't a blanket prohibition on what they could say. In fact, the doctor still had the discretion to do something contrary to that if their medical judgment dictated otherwise. And this... They and our clients have no problem with informed consent. In fact, they engage in informed consent. The California Counseling Associations, when the bill was going through in California, actually filed a letter of objection and said that a less restrictive means would be informed consent, and they proposed an informed consent. And in fact, an informed consent would be what protects the individual client. If the state of New Jersey has an interest in protecting these children, the best way to do it is through an informed consent provision. What is the speech that is being proscribed here by the statute? Is it expressive speech? Yes, it is. What's the expression? It's the expression if a client comes to a counselor and says, I've had these unwanted same-sex attractions, or I've engaged in certain unwanted same-sex behavior. I don't want to do that. Can you help me? That counselor then gives counsel, which is an exchange of ideas and opinions and help. An exchange of ideas? That's what counseling is? An exchange of ideas? That's the dictionary definition of counseling. An exchange of ideas? Yes. It's a dictionary definition of counseling, an exchange of ideas and what these counselors do. They give information. In Dr. King's standpoint, she not only gives information. Is information always speech? Well, they give information and advice and counsel to help them reach their ultimate goal and objectives. They give them advice. They advocate for the clients. They advocate for them in terms of reaching their ultimate objective. What this law does is require them to impose the state's viewpoint, because the client comes in and says, I want to not act on these particular feelings. What's the viewpoint of the counselor? If the client comes in and says, I do not want to act on these certain behaviors or feelings, the counselor cannot assist that client and advise them about how they can overcome or reduce or eliminate those behaviors or feelings or identity. They cannot give the client what they ultimately want. And the client counseling codes across the board require clients to have the right of self-determination. They have the right to be able to seek their objective and the client comes in seeking that. The counselor helps them and advises them and counsels them and encourages them and gives them information and advice and advocates for them to reach that objective. But what this law does is imposes the ideology of the state on them. In other words, you're saying that it's a viewpoint statute. Yes. Like in Conant v. Walters, the Ninth Circuit decision with regards to marijuana. In that case, they could talk about marijuana. They could talk negatively about marijuana, but the doctors could not give counsel to use the law, which is what triggers it here, is the subject matter of marijuana. Here, the thing that triggers the law is the subject matter of same-sex attractions. They also went further that it not only was content-based because it's triggered by the discussion of marijuana, but it's viewpoint- based because they could not advise in favor of it, only contrary to it. Let me take you a little further. If it's a content-based statute, what standard do we use to ascertain whether or to judge, decide whether it violates the Constitution? I think, as you pointed out, Judge, in the Bardnicki case, that if it actually impinges on speech, you don't even go to the O'Brien. You can't invite one. More than one. Yeah, more than one. But I think that case clearly indicates that O'Brien doesn't apply, that you go to a pure speech analysis. But I think here, first of all, it's a content-based, compelling interest and less restrictive means analysis that is at issue here. You're really saying it's a viewpoint. I'm not sure I know the difference between content-based and view-based. Content-based is stopping the entire subject matter. So if the entire subject matter of same-sex attractions was prohibited, it would be content-based. So you couldn't say anything pro or con. But here, it's permitted, but only one viewpoint of it. You can't reduce or eliminate it, but you can affirm it or accept it. So there's no case that's ever upheld a viewpoint restriction on private speech. These are not government actors. They're not seeking licensure. They're not trying to enter the profession and bypass the education and training. They're licensed. It's regulating what happens in the privacy of the counseling room. And when the subject matter of same-sex attractions come up, the counselor has to look back and check the government over the shoulder looking into that counseling room because only one viewpoint of same-sex attractions is permitted. The viewpoint of reduction or change is not. So I think it's viewpoint-based, and based upon that, it's unconstitutional. But I also think it's content-based. And even just for argument's sake, you grant that they have a compelling interest, which, let me come back to that, it's not the least restrictive means available. But the legislature took, had hearings, really, as did the district court, and decided, held, decided as a fact, that it was destructive to minors to change sex or to try to get rid of same-sex attraction, and made a decision. Isn't that a legitimate legislative decision? Well, I think when you look at the issue of what they cited, they cited the American Task Force Association report of 2009, and that report said there's no research on minors. They asked for and called for research on minors. There's no research that it's actually harmed minors because there's no... But don't we, in terms of that record, though,  One would be with respect to whether any harm is done. And I would assume that you would be telling this panel that there is little to no evidence on that, and that the organization in its report conceded that. Correct. But there is also the body of research that would suggest that there is little to no efficacy in the treatment, too. Is there not? And if that's the case, cannot the legislature legislate on the basis of a lack of efficacy in a form of treatment for which someone is taking time and paying money? I don't think they can go that far. And I think Brown at the Supreme Court and the other cases talking about violent... What other cases? Well, the other cases at the Supreme Court regarding consumers' right to have information, but particularly Brown with regards to the violent video games, they said that there was anecdotal information of harm. And you can't have anecdotal information of harm in order to restrict information... When you're talking about health care treatment, if there's no evidence of efficacy, the legislature is free to step in and say, we're not going to permit this. Well, there's also evidence that the APA said of benefits. But if you ban all counsel for which there are low... I mean, the Federal Drug Administration, that's what they do. They look at the efficacy of drugs that are going to be administered before they'll allow it, so that you don't have voodoo doctors out there coming up with supposed cures. But controlled substances are in a completely different situation. If you take, for example, anorexia or bulimia, those are very difficult situations for counselors to have success ratios in. If you were to look at success ratios in counseling across the board and have a ban on those that weren't that helpful, you would ban a lot of counseling. Well, we can find all kinds of distinctions and contrasts between various types of treatment, whether they're top therapy or pharmacological. But the bottom line here is that the police power of the state to regulate for the benefit of citizens' health and safety would permit the state, with an appropriate universe of information and empirical evidence here, to legislate in this area, at least subject to some level of scrutiny, if what this is is speech. And I'd like to hear your position with respect to if it is speech or if it indeed has an incidental impact on speech, whether some lower form of scrutiny, other than heightened scrutiny, would be appropriate. I think at a minimum, the O'Brien level of intermediate scrutiny would be appropriate, because clearly the lower court describes this as conduct. But certainly the conduct, if there is conduct here, it is speech. And the lower court acknowledged that the information is done through talk. And the undisputed evidence is that it's simply done through talk. So the O'Brien level of scrutiny, I think, at a minimum would be applied, and the lower court simply rejected that. The district court gave no consideration at all to anything but rational relation. Is that right? That's correct. And found that the reason is, is because excluded it from any... Well, there wasn't even any reason to get to a level of scrutiny at that point, was there? To this day, I'm trying to figure out what the district court was doing. She said it wasn't speech. She said it didn't have an incidental impact on speech. And in the footnote, there's some reference to whether or not there was a substantive due process claim. Did you raise a substantive due process claim? No, we didn't. Once the court says it's not speech, there's no incidental effect on speech, what's to review? What's to scrutinize? There's a lot of interesting scenarios like that within this court. I guess, and you'll tell us about them in your seven minutes of rebuttal. I'd like to just... Sir, I indicated at the outset that we would stick to the... Sure, very much. And I'll address also the standard, too. Very good. Thank you. Ms. Scott? Ms. Scott, who do you represent? I represent the state defendants. Oh, you represent the state defendants. You're not the intervener. No. Okay. That question was for the intervener. Ms. Scott, could you begin by answering the last question that I asked of Mr. Staver, which is something that just continued to confuse me as I prepared for this case. If the court says there's no speech and there is no incidental effect or impact on speech and there's only a freestanding speech claim, what's left to subject to scrutiny? Why don't you knock down the speech claims if there's nothing to scrutinize anymore? I grappled with that question myself and what I come to is that if there's a free speech claim, you're asking for a heightened level of scrutiny. And so... A little heightened. We don't know how heightened. Correct. But if it's not speech and there's no incidental effect on speech and the court's made that determination, the speech claim falls by the wayside, doesn't it? Yes. And your statute survives. There's no need to scrutinize it for anything at that point, is there? No. Well, what is the conduct that the district court's talking about? I'm sorry? What is the conduct that the district court's talking about? The conduct is the talk therapy that's being provided here. But isn't that talk? It's... Yes, it's talk. It's not speech in the First Amendment sense. What do you mean it's not... It's talk but not speech? Because the intent of sexual orientation change efforts is to bring about change in a minor. Change is the goal, not communication. Not communication? There's no communication going on in the therapeutic setting? When you're attempting to change... That sounds like a prescription for some pretty ineffective therapy if there's no communication going on. It's not... Communication's not the intent. The intent is to bring about a change. You're communicating. That's the vehicle by which you're providing this treatment. It's not the intention. You would agree it's communication? Yes, it's communication. But communication does not necessarily translate into speech as that term of art is used for First Amendment purposes? Yes. What case says that? What Supreme Court case? Don't even give us one of our cases. We've written them all. There isn't a current First Amendment Supreme Court case on this issue. The Supreme Court denied the petition for certiorari in the pickup case. The pickup case said it. The NAAP case in the Ninth Circuit also said it. Those cases still stand. There is a united... They say communication isn't speech? They say the psychoanalysis, talk therapy, is not speech in the sense of the First Amendment. How do you do talk therapy if you don't talk? And if talk isn't speech, then you've lost me. I'm saying talk therapy is not... I mean, it's expression. And expression is within the concept of speech. Talk therapy and the use of verbal communication in sexual orientation change efforts is merely a tool. It's a technique to deliver a particular treatment. Isn't it done by speech? It's done by... Doesn't the therapist talk to the patient? Yes. The therapist talks. That's the vehicle by which they are delivering their treatment. And talk isn't encompassed in the First Amendment? Not all talk, no. Professional conduct, which is what the professional is using when they're talking. Explain how you do it if you don't talk it. Explain how you do... Talk therapy if you're not talking. I mean, talking... Isn't talking speech? Talking is speech. It's verbal communication. It's not speech under the First Amendment sense. It's not protected, pure speech. It's a form of treatment in this case, in this context. Can you direct us... Judge Sloboda asked a moment ago about cases, Supreme Court, even our cases. Could you direct us to any cases in which some form of verbal communication was considered conduct rather than speech? And I've already referred to the Gibney decision, 1949. So let's set that one aside. And setting aside pick-up and NAAP in the Ninth Circuit? Well, pick-up's in the Ninth Circuit. We're not bound by that. We're here in the wake of pick-up. And we'll be informed by it or not informed by it. And there was NAAP in the Ninth Circuit as well, which specifically addressed that the key component of psychoanalysis is the treatment of emotional suffering. I'm asking, what examples can you give me of verbal conduct that has been recognized first by the Supreme Court? Aside from Gibney. Aside from talk therapy? Aside from Gibney. I'm asking you for precedence. Precedence regarding talk therapy or just any sort of professional, like a medical professional speaking? Let me try one more time. Can you point to any precedence of the Supreme Court wherein the Court has held that there has been certain verbal conduct other than the Gibney opinion? Where that concept of verbal conduct has been recognized? I'll take your answer to be no. I'm trying to be broader, I think, than just talk therapy. The point of oral argument is for us to ask questions and you to help us by answering our questions. Now, if there are no such precedence, then that's the answer. If there are, we'd like to hear what they are. Let me ask you about a particular precedent, and it's one that I'm rather surprised that Mr. Staver did not bring up. And that is humanitarian law project. There, the Supreme Court held legal counseling was speech. Why does that not argue strongly against your position here that what happens within the therapeutic context is not speech? There, the statute violated the First Amendment because the conduct triggering the statute was what the message was that was being communicated. Don't rush it. We have to understand the purpose of speech is communication. You have to communicate to us. I apologize. And we will not restrict your speech at all other than by interrupting from time to time with questions. Thank you. I apologize. In humanitarian law, the statute criminalizing the provision of material support to terrorist organizations violated the First Amendment because the conduct triggering that statute was what message was being communicated. Here, that statute was much broader than the statute here. Here, no communication is prohibited. Only the practice of the treatment with minors. It is the practice that triggers the statute. Licensed mental health providers can provide their message. They can even provide their viewpoint on this treatment. They just can't then shift that language, that speaking, into attempting to change the individual. Once they start to attempt that change, once they start to treat a sexual orientation that's not an illness and should not be treated, that's when this statute is triggered. Can you provide us with a rule? Can you provide us with a limiting principle of some kind that would inform the public and courts where something stops being conduct and starts becoming speech? How do you distinguish communications that are speech from those that are conduct? We're in a public court and we often need to lay down rules. The line is drawn at what when the spoken words are meant to effectuate change rather than express ideas. The first amendment is to protect the free exchange of ideas. You're looking at the intent of the communicator? Is that what you're looking at? What the communication is meant to do. If you're meant to exchange ideas then that's the first amendment, that's pure speech. So we should allow the state of New Jersey to dictate to us what constitutes protected first amendment speech for purposes of federal constitutional law? No, in this case the regulated profession they know where the line is drawn. They engage in a discussion regarding what sexual orientation change efforts is with minors and then they go ahead and provide a consent form to their clients to engage in the treatment. So that engaging in treatment is where it ceases to be a first amendment pure speech. Scott, let me give you a hypothetical. Simple hypothetical. Let's say that an adolescent male who has same sex attractions goes to a friend and the friend isn't a professional, he's not a counselor of any kind but as a friend this young man is seeking advice. Now, if the friend of the young man seeking advice says, well you can control these urges they can be suppressed and they ought to be suppressed. Outside the counseling context wouldn't what the friend said to the young man who was seeking advice constitute speech? Absolutely. Alright. So why isn't what we have here speech? I cannot figure out why you are not taking an approach which goes to the level of scrutiny that ought to be subjected, that ought to be applied to what at the very least would seem to have some incidental speech. Because even in your hypothetical, if that were a licensed mental health provider, they'd be permitted to say that. This statute doesn't prohibit them from saying, you can change your sexual orientation. It prohibits them from trying to effectuate that. But you are saying that by virtue of the existence of the statute, that somehow metaphysically changes what was speech in one context and non- speech in another context. In your hypothetical it's speech in both contexts and I'm saying it's not prohibited by the statute. I said from one setting where it clearly you concede would be speech into another setting, the therapeutic setting where you're saying the mere existence of the statute now renders it non-speech. No, I'm not saying that. I'm saying that part, if the counsel were to say the same exact thing in your hypothetical you can change your sexual orientation. That's not prohibited by the statute. That is speech. That's their opinion. It's when they turn into using techniques to attempt to make that change. What techniques? We have struggled with having the plaintiffs define that. The district court asked the plaintiffs to define exactly what it is that they do when they engage in this treatment. But we can point to Dr. Nicolosi's declaration that states that he and his colleagues require his patients to sign a consent form before they engage in social counseling. They know where that line ends. Tell us where the line is. They know but I don't know. I think Judge Smith doesn't know. So he's asking where is that? You say they know the line. If it's a clear line explain it to us. Use speech to tell us. That line is where they get done discussing this therapy is out there. You can change whatever their opinions are, viewpoints are on it. The line is right when that stops and then you start engaging in those techniques you've just discussed. Whatever they are. I think Dr. Drescher gave examples of if you try hard enough if you're deserving of God's love you'll change. Those type of techniques to change the sexual orientation of a minor that becomes conduct. If I say to the minor what you're feeling is ok it's normal 10% of young men feel that is that ok? Does it become speech? And two is it alright under the statute? One, it is speech because you're giving your opinion and two it doesn't come within the realm of the statute because you're not attempting to change a person's sexual orientation it changes minors sexual orientation. Wouldn't somebody, one of the representatives of the state they're all over let's assume say but you're telling him that it's ok and so you're trying to change him? Wouldn't somebody look at that and get that impression and down goes the jail? I don't know if you have a counselor who's saying it's ok to be who you are how that could be perceived that the counselor is trying to change that individual but if that allegation were made the regulating boards would be able to determine on those case by case basis and on the facts of each particular instance. Who should decide the regulating board or the court? This is not a self-effectuating statute it merely defines No statute is self-effectuating we would need the state to help us effectuate the statutes. So this statute is part of the regulatory framework it gives definitional meaning to what professional misconduct is with regard to sexual orientation change efforts with minors so if there was an allegation that a licensed counselor who is regulated by this statute has engaged in something that prohibited this statute Yeah but what does the statute prohibit? We've been trying to get to that It prohibits one from attempting to change the sexual orientation of minors How can you do that without talking? Talking is the vehicle by which you attempt to do that it's just like the needle that delivers a drug you're delivering the treatment And I really am confused now because I thought that in my hypothetical which perhaps I didn't state clearly enough that you said that the message the words the talk, the speech conveyed in the same way in the therapeutic setting as was conveyed by the friend to friend in a private setting that same sex urges could be changed and should be suppressed was speech that it was speech in the private setting and that it was speech in the therapeutic setting In your first hypothetical you didn't say and should be suppressed you said could be changed I'm reading it but that's alright I heard you say that that they could be changed that's an opinion I believe that the counselor could also say should be suppressed, that's their opinion we're not stopping them from saying The opinion's not speech Opinions are, that's why it's not prohibited That opinion is not prohibited by this statute So you can state your opinion but that's not part of the therapeutic treatment within the therapeutic setting I'm really confused It's once they stop talking about their opinions about it in the general sense and start applying these theories to a particular minor to effectuate change in that minor's sexual orientation And how do you start applying it? The district court asked the appellants and the plaintiffs at that time to define exactly what happens and they declined But we're asking you the state because the state is the one that enacted and promulgated this statute so what is it that is illegal under the statute and they're going to lose their license It's once you stop talking about it in the general sense and you stop giving your viewpoint about it and you start applying those opinions How do you apply it? That's exactly our question We want to get specific Once you start applying it it becomes conduct But how do you start applying it if not by virtue of speech? Those techniques are comprised of more than just talk therapy There's a variety of aversion techniques that have been used There's castration, lobotomy, electrostatic therapy Those are obviously conduct Right And those are not espoused by the plaintiffs in this case In fact they have been disapproved by the plaintiffs These old aversive techniques are no longer recognized Correct. Plaintiffs allege they only do talk therapy. That's correct So just like those are techniques to create change in a person to make them not like the same sex Talk is being used the same way I don't understand I'm having some difficulty too. Let me just try one thing in the remaining time Ms. Scott The pickup majority the pickup opinion went so far as at least to take an even if approach with respect to there was a kind of continuum that Judge Graber set up in her opinion The district court here did not do that The district court said not speech not even an incidental effect on speech The state's position also not even an incidental effect on speech Correct The distinction is it's not an incidental effect on speech in the First Amendment sense We're not talking about speech Pure speech. We're talking about speech that occurs in a professional setting where the licensee has a fiduciary duty and is conducting its professional conduct. It's engaged in professional conduct and that speech is not speech in the First Amendment sense Alright. Thank you very much Mr. Flugman Mr. Flugman, help me if you would, please Would your answer be the same to the hypothetical that I set up as was Ms. Scott's answer? Regarding the friend on the street, Your Honor? Well, it was two parts. The friend on the street versus the therapist And then the same thing is said in the therapeutic setting Yeah, Your Honor, I think the answer to that is, first of all, setting aside that he's not licensed and clearly isn't covered Expressing an opinion that same-sex attractions are morally wrong or that same-sex attractions can be changed or that there are ways to suppress them I would agree is speech and that would not fall under the rubric of this statute, whether it was said by the friend on the street or by the licensed therapist or mental health provider in this therapeutic setting Do you agree with the speech conduct dichotomy that the district court Let me interrupt you Of course, Your Honor Yes Judge Smith Yes, Your Honor I do want to follow up on that Isn't then Isn't the belief, the opinion expressed by the friend and by the therapist in my hypothetical Isn't it, in the latter case, by the therapist a predicate to the therapy the sociotherapy that's being offered It very well may be, Your Honor but that's the exact same distinction that the Ninth Circuit drew in the Conant case In the Conant case, they were talking about recommending treatment, talking about treatment discussing risks and benefits All that protected speech In the Ninth Circuit held, that is protected speech And we agree with that We think that this law permits counselors to do that It's when you cross the line and then engage in the practice of trying to actually alter someone's sexual orientation that it moves over to conduct And explain that practice What do you mean, the practice How do you practice Yes, it is through words I will agree with you And is that not protected No, Your Honor, it's not And it actually picks up on the various hypotheticals that both Judge Smith, Your Honor and Judge Sloviter, Your Honor, were making which is, we agree and Your Honor pointed out that the aversive therapies that nobody is claiming is taking place in this case but those therapies are conduct and Your Honor believes that's the case They're conduct to effectuate an end goal of altering someone's sexual orientation But if you think of this as a tool bucket of ways in which you get to that end result this talk therapy is one of those tools that is allowed that was designed to get to that end result and we know from the Gibbony case Your Honor, we know from the Orlick case that just because a course of conduct is effectuated through words whether spoken or written does not bring those words into the ambit of the First Amendment because the words are the tool by which you're effectuating the treatment the end result and that's why in the Conant case you had a distinction drawn between talking about the treatment talking about medical marijuana why it might be helpful why it might benefit this particular patient but then the prohibition on actually going ahead and prescribing that treatment and that's something that New Jersey does all the time with respect to speech and whether words can be used in professional settings without running afoul of the First Amendment the Supreme Court in Orlick did that with words the Supreme Court also did that Your Honor to answer your earlier question in the Fair v. Rumsfeld case where the Supreme Court said that those words the First Amendment didn't have any implications there The Third Circuit knows Fair pretty well Yes, yes they did but as I was saying in terms of what New Jersey already does and that nobody would question that they have the right as the police power of the state to regulate professionals coming under the ambit of their state licensure for example, they regulate what treating mental health professionals can say words can say to people who are in state facilities who are suffering from mental health conditions and that's New Jersey statute annotated section 30, colon 4, dash 27 Why, what can't they say? Particular things that would be counterproductive to the treatment milieu in which the patient finds himself and I actually on this point would direct the panel to the brief that was submitted by the health law scholars as Amici which ticks off a whole series of ways in which the state of New Jersey regulates the conduct of speech in both mental health and medical fields and also other fields it mentions the California case clearly there are cases also What about in teaching? Can the state of New Jersey regulate what people teach? Yes Take for example a controversial field like climate control or evolution take another one Can the state of New Jersey tell secondary school teachers they can't talk about evolution because it's unchristian? I think that's a little bit different your honor, first of all because the words that are being used in that setting are clearly meant to convey ideas that the speaker understands as being expressive and the audience So you're effectively drawing a distinction between the teaching or educational role and the treatment or therapeutic role? No, your honor, it's slightly different I'm drawing the distinction between what the words are meant to convey The purpose of education is an exchange of ideas It's discussion between teachers and students One would hope Yes, but your adversary has explicitly said that that's exactly what counseling is too an exchange of ideas No, your honor, the purpose of counseling in the therapeutic sense is in order to effectuate a treatment, a betterment in the mental health of the patient just like a surgical procedure is designed to benefit the patient by ameliorating them from some kind of disease but nobody would say that a doctor who performs a botched operation would be liable would be immune from malpractice suits but by the First Amendment It's the same purpose that's being served by these words, which are clearly words in this case, but are not being used in the form of constitutional speech Help us, Mr. Flugman with what really if if this panel were to determine that the statute at least has an effect on, an incidental effect on speech, then we have to determine what would be an appropriate level of scrutiny Help us with that, please Yes, your honor, I think rational basis would still apply even if there is an incidental effect on speech here Do you think that to the extent we can draw anything from Planned Parenthood versus Casey that the language that I earlier recited from there, points in the direction of a rational relationship approach I think, your honor, it points into the distinction that we've been discussing here today, because what the Supreme Court said in Casey was that when speech is part of the practice of medicine it's subject to reasonable licensing and regulation There are parts of the speech that engage between a physician and a patient, or a mental health professional and a patient, which clearly are deserving of heightened scrutiny. For example discussions about efficacy of treatments, discussion about availability of treatments and options, discussing risks and benefits with a patient but once then that treatment is implemented and even though in this case it's being implemented by words How does the treatment get implemented? They do get implemented through words, but there is I think what's important to recognize here, your honor and I think there's a lot of struggling with what this is and how I'm sorry to interrupt you, but I just want to stop you when you've just said those words Yes, your honor The fact that this is going, that the treatment is effectuated by words has never been held by the Supreme Court to move that conduct or treatment into the realm of protected speech. And I think it's important to recognize that we're talking about a defined set of practices here that the mental health community is aware of and knows about and I think on that point I would direct the panel to the brief that was submitted by various psychological and psychiatric associations in the state of New Jersey which submitted in that brief that not only is the statutory language very clear on what it prohibits  to alter sexual orientation through, for example, mannerisms behaviors, those sorts of things but, and not only does that language mirror very closely the language that was upheld in pickup, but these organizations were very intimately involved in the crafting of this statutory language. And they represent I'm sorry, go ahead You said that even if there's an incidental effect on speech we should apply rational basis review but would this statute survive intermediate level scrutiny? It would, your honor certainly survive intermediate level scrutiny we set that out in our brief in our discussion of O'Brien clearly the state has a compelling interest, as your honor has recognized in the Free Speech Coalition case a couple of years ago Judge Smith, that the state has a compelling interest in protecting the well-being of minors, both their physical and psychological well-being and under O'Brien Somebody has to accept the fact that sexual orientation change has an adverse effect on minors before you do that and I gather that there are different can judges decide that? And that's, your honor why it's important to look at what the legislature actually did here and the legislature looked at the APA report for sure, but they also looked at many, many other things and the legislative findings on those points are spelled out in great detail in the statute they took testimony from people both proponents and opponents of the law and they considered the positions and the views of every single major professional organization that speaks in this areas and from whom New Jersey gets its standards of what professional care are for licensed conduct Thank you very much Thank you, your honor We'll have Mr. Staver back on rebuttal Thank you, your honor I think the discussion that has just occurred is the problem that the counselors have What is it that actually is banned? When they're in the counseling session and the counseling session is dynamic the question that they have to ask is will the next word or the sentence or the opinion ultimately be the revocation of my license? This is their entire license because if they cross this line wherever this line is and the state has not been able to define where that line is, they lose their license Never before in the history of counseling has any ethical code intruded into this kind of level. In fact there's no existing ethical code including the American Counseling Association that's adopted in about half of the states that bans change therapy The blue brief says somewhere in the beginning that it throws water on the report Yes Do you agree with that? I agree. I mean the report itself that the legislature used as its primary authority says that there's no research regarding minors. We request that There's actually something of a disparity between what's said in the executive summary and what actually occurs in the body Exactly, your honor. The executive summary does not match the actual substance of the report and that is troubling and that shows some of the political issues that are at stake here. What we're talking about is an individual who has a right to set their counseling objectives and has a right to be able to choose a counselor to align their struggles whatever it is, in this case same sex attractions with their objective and the counselor now is trying to give counsel which is advice and advocating for that client to reach those objectives but they don't know where the line is and it looks like it's just a political agenda that has crushed the speech One of the things that, your honor Judge Smith, you mentioned the humanitarian law project I was just about to ask you that We did cite that in our brief You didn't argue it though a little while ago No, that's correct, but I think that case there where it says it banned material support, sounds to me like that might be conduct and yet the Supreme Court That's what the government argued and the Supreme Court said no Now they ultimately upheld the statute because of the broad compelling interest, but the point is they found banning material support for these terrorist type of organizations to include speech because that's how one of the ways that they would actually carry out the material support is through speech. In this case the record evidence by the counselors and their client and the affidavits that were submitted state only one thing, that their counsel is done through talk Those aversive therapies, that's like looking at lobotomy decades ago or a hundred years ago and say you can't have any counseling because they did it a hundred years ago Those are not used and they're certainly decried and not used by our clients. We're not arguing about that. We're talking about what they say and despite what was said that we didn't advise the court what takes place in counseling, we did. The affidavits state it and we made it in the oral argument. What takes place as this court clearly I think has been struggling with where this line is drawn is speech and it's speech when it advocates or has a viewpoint in this particular case to change or to reduce any kind of same sex attractions, behavior romantic feelings toward a person of the same gender. If you affirm them, you're okay. The subject matter of same sex attractions triggers the statute If you go this way to affirm, you're fine. If you go this way to urge change, to counsel change or reduction even of attractions or behaviors you violate the law. Now they want to say it's treatment but the treatment is done through words and that's all it's done with When you say they, who's the they? The defendants in this case The state particularly I think the case in Conant vs. Walters is directly on point They were allowed to talk about marijuana They were allowed to give their opinion about marijuana but they couldn't tell the client you might want to take marijuana for medicinal purposes. We're not talking about writing a prescription The pick up court didn't seem to find Conant very... I know. It was troubling because even the NAAP case was for people that wanted to bypass the licensing and education and training requirements under a free speech. Well that's obviously not a free speech claim and so the NAAP case denied that, said that's not a free speech issue but they did say this There was no evidence in the statute that they were trying to regulate the content of the message that was done within the counseling arena. Conant came after that and said they're building on NAAP both 9th Circuit cases and said what's that issue there with the not allowing the doctors to advise in favor of medical marijuana was speech that was content based, that triggered it, and it was viewpoint based Your Honor, just briefly the court below did not grant the counselors the third party standing. In this case, there's a case the Pennsylvania Psychiatric Association or Society case is directly on point They have a relationship and interest with these clients that assures that they will have adequate representation The counseling codes require that they represent Let me take you to what the district court said and I want to hear what you have to say about it because the district court said that in order to satisfy the injury prong of the third party standing requirement, the plaintiffs were required to prevail on the merits In terms of analysis, isn't that putting the cart before the horse? It's the tautology You don't have standing You can't prevail on the merits so you don't have standing So what evidence do you have? What evidence have you presented to the district court that your clients or that others were actually hindered in their ability from bringing suit? The declaration of Dr. Newman who's one of the plaintiffs in the case, specifically says that he has minor clients in counseling They know about the law They know about the restrictions Clients other than those who have already or separately sued? Correct. In fact, the one that separately sued are not our plaintiff's clients And he specifically says that they do not want to be revealed and it would be damaging and hurtful to them Why wouldn't it be adequate to do it under a pseudonym? Because they don't want to even have the risk of their... This is a sensitive issue when you have a minor struggling with something that they don't want to do The last thing they want to do is have the world somehow know about it in a deposition or somehow leak out They are fearful and they want their counselor to represent them Thank you, Your Honor Thank you very much I want to thank Mr. Staver Ms. Scott and Mr. Flugman for your very helpful and vigorous arguments in this very interesting and very important and very difficult case Thank you all very much Oh, we have KK now Mm-hmm Oh, no, Boney is next Oh, no, KK KK is next, Boney is the video Yeah, that's right Yeah The next matter for argument is KK versus Pittsburgh Public Schools Boney isn't Boney next? No, Boney was supposed to be It's the video Are we to go last with the video? Yeah I'm sorry, KK KK is video